UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CDL NUCLEAR TECHNOLOGIES, INC., | Civil No. 2:20-CV-783-CB |
| *Plaintiff*, | |
| v. | Electronically Filed |
| FIVE TOWNS HEART IMAGING MEDICAL, PC a/k/a FIVE TOWNS HEART IMAGING PC, | |
| *Defendant*. | |

**PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE**

Plaintiff, CDL Nuclear Technologies, Inc. ("CDL"), hereby responds to the Court's Order to Show Cause regarding sealed/redacted filings (ECF No. 21). The Court's Order to Show Cause, issued January 15, 2021, requests that CDL show cause "as to why all materials previously sealed or redacted in this matter including but not limited to isotope dose pricing and the billing minimum should not be unsealed/unredacted pursuant to the Third Circuit ruling in *In re Avandia Marketing Sales Practices & Products Liability Litigation*, 924 F.3d 662 (3d Cir. 2019)."

**I.   Background**.

In connection with filing its Complaint in this action, CDL filed the Equipment Lease Agreement (the "Agreement") at issue in the dispute between CDL and Defendant. CDL filed under seal certain provisions of the Agreement that detail CDL's pricing and offerings. CDL acknowledges the Agreement constitutes a judicial record and as such, the common law and First Amendment rights of access—and the presumption in favor of disclosure—attaches. *See Wartluft v. Milton Hershey Sch.*, Civil No. 1:16-CV-2145, at *7-8 (M.D. Pa. Mar. 6, 2020)

("Once a document is determined to be a 'judicial record,' a presumption of public access applies…On this score, the Third Circuit has held that this presumptive right of access applies to 'pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith.'")

CDL filed under seal certain provisions of its Agreement disclosing specific pricing and terms of certain service offerings that CDL considers confidential. In particular, CDL filed under seal: (1) the radioisotope dose price, (2) the equipment lease price, (3) the monthly billable minimum, (4) the amount of the build-out allowance, (5) contract terms governing the build-out allowance, (6) contract terms governing transition between CDL's generator use models, and (7) contract terms detailing the specific accommodations CDL provides if there is a decline in Medicare reimbursement for the medical services a customer provides using the equipment that CDL leases to it.

II.     **Legal standard**.

In *Avandia*, the court made clear that although the common law presumption of access is a strong one, it can nonetheless be overcome "when the interest in secrecy outweighs the presumption." *Avandia*, 924 F.3d at 672. To overcome that presumption, CDL must demonstrate to this Court that the terms of the Agreement CDL seeks to protect consist of "the kind of information that courts will protect," and that public disclosure of those terms "will work a clearly defined and serious injury to [CDL]." *See id*. (internal quotation marks and citations omitted). Specificity is essential, and broad allegations of harm, bereft of specific examples of articulated reasoning, are insufficient. *Id*. (citations omitted).

The standard for sealing a record in light of the First Amendment right of access is higher than the common law standard, requiring that CDL show good cause for sealing the record by demonstrating "an overriding interest [in excluding the public] based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id*. at 673.

A.      The Agreement terms are of the type of information that courts will protect.

An interest in safeguarding a trade secret may overcome a presumption of openness. *See Avandia*, 924 F.3d at 673. "To be sure, courts may permissibly seal judicial records where they are sources of business information that might harm a litigant's competitive standing." *Id.* (internal quotation marks omitted).

"The revelation of trade secrets, or of other competitively sensitive information that may not meet the formal definition of 'trade secret,' but nonetheless is shown to be of the nature that would work palpable competitive harm on a party, is precisely the type of material most likely to successfully rebut the presumption favoring access." *Genentech, Inc. v. Amgen, Inc.*, Civ. No. 17-1407- CFC at *10 (D. Del. Sep. 2, 2020) (noting that preserving the confidentiality of settlement agreement terms is a valid basis for sealing judicial records); *Cutsforth, Inc. v. Lemm Liquidating Co.*, Civil Action No. 17-1025, at *3 (W.D. Pa. Feb. 18, 2020) (noting that information need not be characterized as a trade secret in order to be considered for protection); *H.J. Heinz Co. v. Boulder Brands USA, Inc.*, No. CV 15-681, at *1 (W.D. Pa. Sept. 23, 2016) (noting that "some non-trade secret, confidential business information may also be protected, for example, where the moving party shows that the disclosure of such information might harm its competitive standing").

All of the information CDL seeks to protect under seal is competitively sensitive information that CDL takes reasonable steps to protect and from which CDL derives value due to

the fact that information is not known to its competitors. (*See generally* Ex. A, Decl. of Lon Wilson.)

      B.      <u>Disclosure will work a clearly defined and serious injury to CDL</u>.

The second showing CDL must make is that "disclosure will work a clearly defined and serious injury to [it]." *Avandia*, 924 F.3d at 672. Specificity is essential, and broad allegations of harm, bereft of specific examples of articulated reasoning, are insufficient. *Id*. In Section III of this Response, CDL provides a provision-by-provision discussion of the harm CDL will suffer if each confidential contractual provision is disclosed.

The competitive harm CDL will suffer through disclosure of its information is not limited to enabling a competitor to better compete on price and service against CDL. In fact, Defendant already has threated CDL that it will use this action to harm CDL in the marketplace. (*See* Decl. of Brendon Loiselle, attached to this Response as Exhibit B, at ¶ 3, Ex. 1.) Further, Michael Hoffman of Jags Medical, Inc., a competitor of CDL assisting Defendant obtain cardiac PET equipment and radioisotopes, already has delivered notices to CDL's customers and suppliers advising that CDL is engaged in unlawful practices, relying on the assertions Defendant has made in this action to provide a veneer of credibility. (*See id*. at ¶ 4, Ex. 2; Ex. A, Decl. of L. Wilson, at ¶ 14, Ex. 1).

Shortly after Defendant filed its brief in support of its motion to dismiss, Mr. Hoffman delivered a communication to a current customer of CDL wherein Mr. Hoffman referenced Defendant's spurious assertions about CDL and warned that CDL's customers should be concerned about the risk of doing business with CDL. (*See* Ex. B at Ex. 2.)

CDL is aware of other communications Mr. Hoffman made using information and allegations in this action to competitively harm CDL in the marketplace. On November 9, 2020,

Mr. Hoffman emailed an undisclosed number of recipients, including an employee of Bracco Diagnostics, Inc., the supplier of the Rubidium-82 radioisotope to CDL, advising that CDL's business practices are illegal and quoting at length from materials filed in this action.  (*See* Ex. A, Decl. of L. Wilson, at ¶14, Ex. 1.)

Defendant makes its arguments in this action and Mr. Hoffman repeats them in the marketplace despite the fact that National Government Services, Inc., the Medicare Area Contractor for New York, makes crystal clear on its website that payments for radioisotopes such as Rubidium-82 are based on acquisition or contractor pricing, namely the price at which Defendant obtains radioisotopes from CDL.  (*See id*. at Ex. 2.)

Against this backdrop CDL is understandably concerned that anything filed in this action will be used to CDL's competitive disadvantage, at best informing its competitors of its offerings so they may improve their offerings and at worst, providing additional information that will be misrepresented to sew confusion about CDL in the marketplace and disparage CDL to its customers.  In the face of these risks, continued sealing of CDL's confidential information is proper.  *See Nixon v. Warner Comm's, Inc*., 435 U.S. 589, 598 (1978) ("Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes.").

Further, threats from Dr. Sokol regarding his intention to use this action to disrupt CDL's business relationships with its customers underscores CDL's interest in maintaining the confidentiality of key provisions of its Agreement, especially where Defendant agreed to confidentiality obligations.  *See Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1073-74 (3d Cir. 1984) (discussing the sealing of judicial records based on protecting the attorney-client privilege, and noting that "[a] similar situation would be presented where there is a binding contractual

5

obligation not to disclose certain information which to the court seems innocuous but newsworthy; in that situation unbridled disclosure of the nature of the controversy would deprive the litigant of his right to enforce a legal obligation").

Moreover, to the extent Hoffman or any competitor of CDL does not offer the scope of goods and services that CDL offers, disclosing to those competitors the precise mechanics and financial terms of CDL's various offerings allows competitors of CDL insights into creating or refining their offerings or partnering with other service providers to better compete against CDL. (*See generally* Ex. A, Decl. of L. Wilson.)

**III.    Provision-by-provision discussion of the Agreement.**

In the following sections, CDL sets out for each redacted portion of its Agreement its position on the continuing sealing of those terms under the *Avandia* framework.

    A.    Radioisotope pricing (Section 3(a) of Doc. 12-1).

CDL acknowledges this Court's proper questioning under *Avandia* whether isotope dose pricing and the billable minimum redacted in Section 3 of Doc. 12-1 should remain sealed given the presumption in favor of public access. Although CDL believes that maintaining the secrecy of its radioisotope pricing provides CDL with a competitive advantage, CDL no longer maintains that the radioisotope dose pricing it provided to Defendant should be sealed under the standards articulated in *Avandia* – especially in light of the fact that a competitor is using this action to spread misinformation about CDL in the marketplace, notwithstanding that CDL's operates in accord with the guidance given by both CMS and National Governmental Services, Inc., the Medicare Area Contractor for New York. (*See id*. at ¶ 15, Ex. 2.)

    B.    Equipment lease pricing (Section 3(a) of Doc. 12-1).

The amount of the equipment lease fee is one of the most competitive and heavily negotiated terms of a cardiac PET equipment lease. CDL endeavors to keep this amount sealed because the negotiated lease fee may vary between customers for the same make and model of equipment. (*See id*. at ¶ 6.)

If the amount of this price is unsealed it will materially harm CDL in two ways: it will enable CDL's competitors to learn the fees CDL will accept for a popular cardiac PET system and will disclose to CDL's customers the specific amount Defendant was charged, which may impair the goodwill existing between CDL and its customers. *See Cutsforth*, Civil Action No. 17-1025, at *5 (W.D. Pa. Feb. 18, 2020) ("The Special Master also found that negotiated reimbursement rates are highly negotiated and confidential and are individualized from customer to customer, making them the type of confidential commercial information that courts protect…As a result, disclosure of these rates would cause serious injury….")

    C.    <u>Billable minimum (Section 3(b) of Doc. 12-1)</u>.

Cognizant of the view this Court expressed on the continued sealing of the billable minimum, CDL respectfully submits that the billable minimum set out in Section 3(b) of the Agreement should remain sealed. Disclosure of the billable minimum will harm CDL's negotiating position with customers, who may be encouraged to request lower minimums. Disclosure of the billable minimum also will enable CDL's competitors to gain insight into its pricing strategies and the revenue it generates from radioisotope sales.

Moreover, disclosure of the billable minimum will enable competitors to gain insight into CDL's pricing thresholds for transitioning customers between its generator use models. Section 25 of the Agreement makes clear that Defendant commenced the Agreement under a shared-use

model.  This fact, coupled with disclosure of the billable minimum, will provide valuable insight into CDL's triggers for transitioning customers between full-time use and shared use models. Finally, disclosure of the billable minimum will provide information to CDL's competitors about its revenue expectations for customers, providing insight into the segments of the market CDL targets.  (*See* Ex. A, Decl. of L. Wilson at ¶ 7); *Cole's Wexford Hotel, Inc. v. Highmark, Inc.*, Civil No. 2:10-cv-01609-JFC, Doc. 692 at page 103 of 363 (W.D. Pa. Dec. 19, 2019) (recommending that a contract provision continue to be sealed because it contains confidential "deal points" subject to sealing).

        D.      <u>Amount of the build-out allowance (Section 3(c) of the Agreement)</u>.

After considering sealing the amount of the build-out allowance under the *Avandia* framework, CDL no longer believes there is a need to maintain the confidentiality of the amount of the build-out allowance.  The amount of the build-out allowance is driven largely by the condition and location of the facility where the cardiac PET equipment will be operated and as such the risk of competitive harm to CDL in making publicly available the amount of the build-out allowance provided to Defendant is low.

        E.      <u>Contract terms for the build-out allowance (Section 3(c)1. and Section 3(c)2. of the Agreement)</u>.

CDL respectfully maintains that continued sealing of the Agreement terms governing the mechanics of the build-out allowance is warranted due to the fact the sealed provisions provide precise details about a unique commercial offering CDL provides to customers that gives CDL an advantage over its competitors.  (*See* Ex. A, Decl. of L. Wilson, at ¶ 8.)  If this information is publicly available to CDL's competitors, it will enable these competitors to develop or refine

similar offerings to better compete against CDL.  *See Avandia*, 924 F.3d at 673 (noting that sealing of a judicial record is proper where disclosure will competitively disadvantage a party).

   F. <u>Contract Terms for Generator Use Models (Section 25 of the Agreement)</u>.

CDL respectfully submits that continued sealing of limited provisions of Section 25 of the Agreement is proper under *Avandia*.  CDL was careful to narrowly tailor its redactions to only the key financial triggers establishing the transition between generator use models.

CDL believes it is one of the few, if not only, cardiac PET service providers offering this flexible approach to purchasing unit doses of radioisotope.  Disclosure of the financial triggers for transitioning between these generator use models will enable CDL's competitors to better understand CDL's revenue models and better compete against CDL by understanding the scenarios under which CDL is likely to propose a particular use model to a customer.  *See Bracco Diagnostics, Inc. v. Amersham Health Inc.*, No. CIVA 3-6025-FLW, *6 (D.N.J. July 18, 2007) (stating that "commercially sensitive information, such as information from which profit margins can be deduced, and from which a litigant's market competitiveness may be harmed, is often sealed from public access").

   G. <u>Reimbursement Decline (Section 40 of the Agreement)</u>.

CDL offers its customers certain protections against reductions in Medicare reimbursement rates for the medical services those customers provide using the equipment and radioisotopes CDL supplies.  (*See* Ex. A, Decl. of L. Wilson, at ¶ 11.)  Disclosure of CDL's reimbursement decline formula will provide a detailed guide of exactly the accommodations CDL is willing to offer and from which a competitor can infer CDL's costs and margins.  Courts routinely protect this type of information.  *See Bracco, supra*.

## IV.  Conclusion.

CDL respectfully submits that continuing sealing certain provisions of its Agreement, as set out in this Response, is proper under *Avandia* with respect to the public's rights of access under the common law and the First Amendment.  CDL has an overriding interest in protecting key provisions of its Agreement from inspection by competitors and has narrowly tailored its redactions to protect a limited set of key competitively sensitive financial and operational terms.  The cardiac PET services market is highly competitive and the risks to CDL's information are not merely speculative.  Continuing the sealing of certain provisions of the Agreement strikes the proper balance between CDL's interest in secrecy and the public's right to access judicial records.

Respectfully submitted,

LEONARD, PLLC

/s/Roy E. Leonard
Roy E. Leonard (PA 54782)
105 Market Street, Suite 300
Pittsburgh, PA 15222
Telephone: (412) 448-2868
Facsimile: (412) 448-2860
Email: rleonard@leonardfirm.com

SEIGWORTH LAW GROUP LLC

/s/Bryan Seigworth
Bryan Seigworth (PA 93038)
4885-A McKnight Road, Suite 412
Pittsburgh, PA 15237
Telephone: (412) 977-2699
Email: bryan@seigworthlaw.com

Attorneys for CDL:
CDL Nuclear Technologies, Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that, on January 25, 2021, a true and correct copy of the foregoing was filed electronically by way of the Court's CM/ECF system, which will send notice to all registered users, including the following:

David M. Belczyk, Esq.
PORTER WRIGHT MORRIS & ARTHUR LLP
6 PPG Place, Third Floor
Pittsburgh, Pennsylvania 15222
dbelczyk@porterwright.com

*Counsel for Defendant*

Respectfully submitted,

LEONARD, PLLC

/s/Roy E. Leonard
Roy E. Leonard (PA 54782)
105 Market Street, Suite 300
Pittsburgh, PA 15222
Telephone: (412) 448-2868
Facsimile: (412) 448-2860
Email: rleonard@leonardfirm.com