# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CDL NUCLEAR TECHNOLOGIES, INC. | )<br>)<br>) Civil Action No. 2:20-cv-783 |
| Plaintiff, | )<br>) |
| v. | )<br>) *Electronically Filed*<br>) |
| FIVE TOWNS HEART IMAGING MEDICAL, PC a/k/a FIVE TOWNS HEART IMAGING PC, | )<br>)<br>)<br>) |
| Defendant. | ) |

## **DEFENDANT'S BRIEF IN RESPONSE TO ORDER TO SHOW CAUSE**

The Court should unseal the Equipment Lease Agreement in full. CDL chose to bring this lawsuit and put their Lease at issue. Any attention from competitors and the industry cited in CDL's Response are a result of CDL's own public filings. Now CDL complains that key information in its lawsuit should not be public, but it cannot show the clearly defined, specific harms that it must demonstrate to keep this information under seal. Based on CDL's Response, it has lost no customers or revenue related to this lawsuit, and it has not identified any particular revenue that could be at stake. Amorphous claims about competitor insight or the vague possibility that it may suffer an unspecified harm at a future, unknown date do not suffice under the Third Circuit's demanding standard to deny public access. Nor is the information the Court is considering unsealing the type courts usually protect.

## **Legal Standard**

*In Re Avandia Marketing Sales Practices & Products Liability Litigation* creates a strong presumption in favor of public access. 924 F.3d 662, 678 (3d Cir. 2019). The burden is on CDL to show that the information it wants to seal is the type of information

courts usually protect. *Id*. Then CDL must show that unsealing the information would lead to "specific," "clearly defined," and "serious injuries." *Id*. at 672. This presumption cannot be overcome by concerns over a company's reputation or public image. *Id*. at 676.

## Argument

### A. CDL has not demonstrated any specific, clearly defined harms.

CDL recognizes that courts protect information when revealing it may lead to a "clearly defined and serious injury." Plaintiff's Response to Order to Show Cause ("CDL Response") at 2, ECF No. 22; citing *Avandia*, 924 F.3d at 672. But CDL has not identified any harms that have come to pass or that will come to pass if additional information is unsealed. For instance, CDL does not argue that it has lost a customer or revenue since the parties' lawsuit started last year. Nor does it argue that any customer has contacted CDL to discuss the lawsuit or its business practices. Without an identifiable harm thus far, CDL is left to speculate about future, amorphous harms without explaining which customers or what amount of money are at stake. *Goldstein v. Forbes (In re Cendant Corp.)*, 260 F.3d 183, 194 (3d Cir. 2001) ("Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient.").

Examples of CDL's vague allegations include: "[sowing] confusion about CDL in the marketplace," "impair[ing] the goodwill existing between CDL and its customers," and providing information about CDL's "revenue expectations." CDL Response at 6-8 None of these possibilities are reduced to concrete and particularized harms. None of these possibilities are in any way quantified with dates or dollars, and thus it is impossible to determine whether they are "serious injuries" for purposes of *Avandia*. CDL has failed to meet its burden.

If CDL is concerned that its business model has been called into question by the lawsuit that it filed, then such harms are the type of reputational harms that do not justify confidential treatment. *Avandia*, 924 at 676 ("But we have repeatedly said that concern about a company's public image, embarrassment, or reputational injury, without more, is insufficient to rebut the presumption of public access."); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1074 (3d Cir. 1984) ("The presumption of openness plus the policy interest in protecting unsuspecting people from investing in Publicker in light of its bad business practices are not overcome by the proprietary interest of present stockholders in not losing stock value or the interest of upper-level management in escaping embarrassment."). In short, publicly disclosing information that may paint a company in a bad light is permissible; especially in this situation where CDL itself put the pricing, quota, and reimbursement terms at issue.

In the absence of particular harms, CDL attaches an e-mail from an entity that CDL identifies as a competitor. CDL's Response at 4. The e-mail purports to come from a Michael Hoffman at Jags Medical, who seems to have his own concerns about public aspects of CDL's business model and potential overbilling to Medicare. *See* Exhibit 1 to Exhibit A of CDL's Response (Declaration of Lon Wilson). The e-mail discusses already public aspects of this case. *Id*.

The e-mail does not demonstrate concrete harm under *Avandia*. First, CDL does not state that any of its customers have contacted it with concerns or worries over the e-mail, which was sent over two months ago. CDL does not state that it has lost accounts or customers due to the e-mail. CDL dos not identify what particular harm will come to it if Jags Medical or another had additional details about CDL's lease with Five Towns Heart Imaging. Second, the e-mail raises concerns that "billing for Cardiac PET Scans

3

must be based on fair market value for the associated generator and Rubidium doses" and that Medicare should be billed for the cost of the generator divided by number of patients. E-mail from Mr. Michael Hoffman, Nov. 9, 2020, ECF No. 22-1. These concerns are based on CDL's business model, not on the specific figures in one lease with one provider. Third, if CDL dislikes that it has come under criticism, these reputational concerns are insufficient to seal the record. *See Avandia*, 924 at 676. CDL apparently knew that the Lease's quotas and billing directives would be a key issue in this contract litigation before it filed suit. *See* Declaration of Brandon Loiselle ¶3. CDL can hardly be surprised that competitors have noticed what CDL elected to dispute in a public forum.

## B. **CDL's redactions are unlike the types of information *Avandia* protects.**

The information CDL seeks to seal is not the type typically protected by courts and should be unsealed. See *Avandia*, 924 F.3d at 672. As an overarching issue, CDL's Lease anticipates that Five Towns will pass the costs of the Lease along to Medicare. The Lease even contains a Medicare reimbursability clause. Lease ¶ 40, ECF No. 12-1. In highly-regulated industries like healthcare, where public dollars are being spent, courts are less likely to seal given the public's heightened interest. *Fields PAG, Inc. v. CDK Glob., LLC*, Civil Action No. 16-cv-01876-MCA-MAH, 2016 U.S. Dist. LEXIS 193254, at *7 (D.N.J. June 10, 2016) ("Factors weighing in favor of disclosure are whether the information concerns public officials, government agencies or 'matters of public concerns,' such as public health or civil rights.").

Medicare reimbursement questions at the heart of this case will determine whether Five Towns was correct to question the Lease and whether the Lease was void

for violating public policy, among other things, because of its quotas. The Lease requires Five Towns to pay for a minimum number of patients a month and instructs providers to bill specific amounts and codes for that treatment. Lease ¶ 3(b). CDL recognizes the connection to Medicare because it includes Medicare Reimbursement provisions in the Lease. E.g., Lease ¶ 40. Public policy questions about the Lease's viability equate to public interest.

The cases CDL relies upon concern different types of information than the Lease terms at issue. In *Cutsforth, Inc. v. Lemm Liquidating Co.*, LLC, Civil Action No. 17-1025, 2020 U.S. Dist. LEXIS 26866 (W.D. Pa. Feb. 18, 2020) and *Bracco Diagnostics, Inc. v. Amersham Health*, Inc. No. 03-6025 (FLW), 2007 U.S. Dist. LEXIS 51828 (D.N.J. July 18, 2007) the court sealed voluminous financial information about a company's sales, costs, and profits across its customer base. Here, the terms at issue are for a single provider in one lease. This is not the same kind of all-encompassing information. Similarly, the citation to *Cole's Wexford Hotel, Inc. v. Highmark, Inc.*, Civil No. 2:10-cv-01609-JFC, Doc. 692 at page 103 of 363 (W.D. Pa. Dec. 19, 2019) overreads the court's holding. The Western District elected not to seal information because the burdens under *Avandia* were not met: "Neither [party] has made a sufficiently particularized showing that identify which 'deal points' they claim are confidential commercial information such that the Special Master can make a general recommendation concerning 'deal points.'" *Id.* at *77-78. The Court went on to hold that a single deal point — spanning only 5 lines — should remain under seal.

In addition to its failure to show particularized harm, CDL should not be able to continue sealing the type of information in its Lease:

5

- **Equipment Lease Prices** (section 3(a) of Doc. 12-1) – The rate for a one-off equipment rental does not pose a risk to CDL's business or future negotiations, and it is too narrow to be the kind of price information that courts seal.

- **Monthly Billable Minimum** (section 3(b) of Doc. 12-1) – CDL's monthly billable minimum drives costs that are passed along to Medicare and the public has an overriding interest in being able to view it.

- **Contract terms for build-out** (section 3(c) of Doc. 12-1) – There is nothing competitively sensitive about the fact that CDL provides loans to its customers to prepare their offices for nuclear medicine equipment. In fact, CDL agrees that the amount does not need to be sealed. CDL provides no specific evidence of harm about how disclosing the *structure* of the loan to competitors may allow them to adapt their offerings to compete with CDL.

- **Contract terms for use models** (section 25 of Doc. 12-1) – CDL argues that its competitors will "better understand" its revenue model if this information is unsealed. CDL's Response at 9; citing *Bracco Diagnostics,* 2007 U.S. Dist. LEXIS 51828. But information at issue in *Bracco* included gross sales, costs, and advertising that could be used to immediately calculate profit margins. *Id.* at *15-17. At issue here is a single Lease. This narrow information is not usually sealed and is so removed from CDL's overall corporate profitability that a competitor could not calculate this information using the terms.

- **Medicare Reimbursement Decline** (section 40 of Doc. 12-1) – How CDL handles Medicare reimbursement and the amounts paid for rubidium-82 doses are at the heart of this matter. In addition, the public has a strong interest in understanding Medicare reimbursement, considering its tax dollars are at stake. *Avandia*, 924 F.3d at 676 (noting the presumption in favor of public access and "the public's interest" as guidance when deciding to seal documents).

## Conclusion

For the foregoing reasons, the Court should unseal the Equipment Lease Agreement in full.

Respectfully submitted:

Date:  January 27, 2020          /s/David M. Belczyk
                                                David M. Belczyk, Esq. (PA 204214)
dbelczyk@porterwright.com
Matthew C. Gill (PA 315896)
mgill@porterwright.com
PORTER WRIGHT MORRIS & ARTHUR LLP
6 PPG Place, Third Floor
Pittsburgh, Pennsylvania 15222
Tel:    (412) 235-4500
Fax:    (412) 235-4510

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that, on January 27, 2020, a true and correct copy of the foregoing was filed electronically by way of the Court's CM/ECF system, which will send notice to all registered users, including the following:

Roy E. Leonard, Esquire
Leonard, PLLC
105 Market Street, Suite 300
Pittsburgh, PA 15222
*Email: rleonard@leonardfirm.com*

Bryan Seigworth, Esquire
Seigworth Law Group LLC
4885-A McKnight Road, Suite 412
Pittsburgh, PA 15237
*Email: bryan@seigworthlaw.com*

*/s/ David M. Belczyk*
David M. Belczyk, Esq. (PA 204214)
dbelczyk@porterwright.com

PORTER WRIGHT MORRIS & ARTHUR LLP
6 PPG Place, Third Floor
Pittsburgh, Pennsylvania 15222
Tel:   (412) 235-4500
Fax:   (412) 235-4510

*Counsel for Defendant*

14160698