IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CDL NUCLEAR TECHNOLOGIES, INC | ) | |
| | ) | Civil Action No. 20-783 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| FIVE TOWNS HEART IMAGING | ) | |
| MEDICAL, PC | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

**I.     MEMORANDUM**

On May 28, 2020, Plaintiff CDL Nuclear Technologies, Inc. (hereinafter, "CDL") filed a Complaint (Doc. 1) against Defendant Five Towns Heart Imaging Medical, P.C. (hereinafter, "Five Towns"). After requesting leave to file an exhibit to the complaint under seal, which the Court granted (see Docs. 4, 6), CDL filed an Amended Complaint on July 31, 2020 (hereinafter, "Amended Complaint," Doc. 12). After requesting leave to file its supporting brief under seal, which the Court granted (see Docs. 13, 14), Five Towns filed a Motion to Dismiss (hereinafter, "Motion," Doc. 15), along with Briefs in Support (redacted (Doc. 16) and unredacted (Doc. 17)) on August 14, 2020. On September 3, 2020, CDL filed a Response in Opposition (hereinafter, "Response," Doc. 19). On September 11, 2020, Five Towns filed a Reply in support its Motion to Dismiss (hereinafter, "Reply," Doc. 20). After consideration of all briefing and documents filed by the parties, Five Towns's Motion to Dismiss (Doc. 15) will be denied.

**A.   BACKGROUND**

CDL avers that parties entered into an "Equipment Lease Agreement" (hereinafter, the "Agreement") where CDL was the Lessor and Five Towns was the Lessee. CDL agreed to lease

1

to Five Towns a cardiac PET imaging system, to supply it with Rubidium-82, and provide technical support services.  (Amended Complaint at ¶¶ 7-8.)  CDL avers that Five Towns attempted to renegotiate the Agreement beginning in or about the end of March 2020 regarding the amount of Isotope fees, and when unsuccessful, eventually terminated the Agreement.  (Amended Complaint at ¶¶ 25-28.)  In simple terms, CDL's claims against Five Towns arise from this business relationship gone sour.  (See generally Amended Complaint.)  CDL's Complaint charges four counts: Count I is breach of contract (Amended Complaint at ¶¶ 42-48), Count II is for payment on invoices issued for the time period February 2020 through May 2020 (Id. at ¶¶ 49-54), Count III is for unjust enrichment (Id. at ¶¶ 55-60) and Count IV is for anticipatory breach (Id. at ¶¶ 61-71).  CDL also requests from the Court four additional items of relief, which are: (A) actual and compensatory damages, (B) enjoining Five Towns from contracting with any other supplier of the relevant equipment for the remainder of the "Initial Term" of the Agreement and for a period of one year after, (C) attorney's fees and (D) all other relief, both legal and equitable, the Court deems necessary, just and proper.  (Id. at ¶ 71.)

  At this stage, Five Towns asks that the Court dismiss certain of CDL's claims for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) as to two of CDL's claims, namely: (1) CDL's claim for attorney's fees, as such damages are not authorized by the Lease Agreement nor applicable law; and (2) CDL's claim for damages for future payments under the acceleration clause in Section 19(c) of the Lease Agreement, as these damages constitute unenforceable penalty.  (Motion at 1.)  The Court will discuss each in turn.

  Finally, the Court has allowed parties leave to file certain documents under seal, while indicating that if any redactions are inconsistent with In re Avandia Marketing Sales Practices &

Products Liability Litigation, the Court may order that that information be disclosed. See 924 F.3d 662 (3d Cir. 2019) (presumptive right of access to judicial records is overcome by a showing that the type of information sought to be sealed would work a clearly defined and serious injury if disclosed).  This too will be addressed herein.

B. ANALYSIS

    1. Attorney's Fees

At the motion to dismiss stage, the Court first accepts all factual allegations in the complaint as true. Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009).  Under Pennsylvania law there is a clear presumption against fee shifting.[1]  Each party is to bear its own costs, absent special circumstances, such as when parties have agreed on a certain arrangement or when it is statutorily mandated.  See, e.g., Lavelle v. Koch, 617 A.2d 319, 323 (Pa. 1992) (internal citations omitted) ("[A] litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or some other established exception.").  CDL argues that it is entitled to attorney's fees under the Agreement, specifically pointing to two sections, Sections 17 and 19(c). (Amended Complaint at ¶ 40; see also Response at 12-16.)

Section 17 of the Agreement is an indemnity clause that states that "[Five Towns] shall *indemnify* [CDL] and its directors, officers, employees and affiliates ("Indemnified Parties") against, and *hold each Indemnified Party harmless from*, any and all actual or threatened claims . . . ." (emphasis added).  (Agreement (Exhibit 1, Doc. 12-1).)  Section 17 is clearly designed to protect CDL to the extent that Five Towns or anyone Five Towns works with—in other words, third parties—pursues claims against CDL in the context of the Agreement.  As Five Towns

---

[1] The governing law is Pennsylvania law. (See Agreement (Exhibit 1, Doc. 12-1) at § 34.)

3

argues in its Brief in Support, the indemnity clause as written applies to protection against third parties and cannot apply to govern the relationship between CDL and Five Towns. (Docs. 16, 17 at 12-13). CDL makes much of the terms "any and all" and "incurred by" in quoting the indemnity clause while failing to acknowledge the terms "hold . . . harmless." This Circuit recognizes that terms such as "hold harmless" generally indicate an attempt to restrict indemnification obligations to third party claims. See, e.g., Travelers Indem. Co. v. Dammann & Co., 594 F.3d 238, 255 (3d Cir.2010) (holding that a party's duty to "indemnify" must be interpreted in relation to the accompanying words "defend" and "hold harmless," and "the only sensible reading of [the] clause evidences a requirement that third-party liability exist for the clause to be triggered").[2] Moreover, under Pennsylvania law, the Court "must strictly construe the scope of an indemnity contract against the party seeking indemnification." Jacobs Constructors, Inc. v. NPS Energy Servs., Inc., 264 F.3d 365, 371 (3d Cir. 2001). The Court does not agree with CDL's interpretation of Section 17 and finds that it cannot be the basis of an award of attorney's fees.

The second provision CDL relies on as a basis for award of attorney's fees is Section 19(c) of the Agreement. (Amended Complaint at ¶ 40; see also Response at 13-16.) Section 19(c) states that in the event of default, "[Five Towns] shall pay all costs and expenses incurred by [CDL] in connection with the enforcement of its rights and remedies hereunder." The enforceability of Section 19(c) is a question that is best decided at a later stage in the proceedings for reasons that will be discussed below. Because the Court perceives issues of fact relative to

---

[2] Although the Court in Travelers Indem. Co. interpreted the applicable indemnification language under New Jersey law, its analysis is instructive in this case because the relevant principles of contract construction that were applied in Travelers mirror the principles of contract construction that apply in this case under Pennsylvania law. See Equitrans Servs., LLC v. Precision Pipeline, LLC, 154 F. Supp. 3d 189, 204 (W.D. Pa. 2015).

4

the enforceability of Section 19(c) that are not capable of disposition on the present record, it is premature to consider the attorney's fee claim insofar as it is premised on Section 19(c). As such, Five Towns's motion to dismiss CDL's claim for attorney's fees is denied.

## 2. Future Payments Under the Acceleration Clause in Section 19(c)

CDL asks for damages in the form of future payments under Section 19(c) of the Agreement. (Amended Complaint at ¶ 33.) Section 19(c) anticipates, in the event of default by Five Towns, that CDL may "accelerate all unpaid Rent remaining for the Initial Term or the then-current term of the Lease" and require Five Towns to "pay an amount equal to the product of the average monthly Isotope payment made by [Five Towns] in the trailing twelve month period . . . multiped by the number of months remaining in the Initial Term . . . provided that such amount shall not be less than the product of the monthly Billable Minimum Isotope fee multiplied by the number of years remaining in the Initial Term . . . ." The parties were still in the Initial Term, which is a period of 60 "Billable Months" from the "Date of First Billable Use of the Equipment." (Agreement at § 2.) CDL indicates in its Response that it is no longer seeking rent acceleration because Five Towns returned Equipment to CDL on July 29, 2020 (and has amended its complaint accordingly), and states that the current dispute pertains to provisions regarding Rubidium-82. (Response at 7-8.) CDL argues that Section 19(c) is meant to make CDL whole and is enforceable, that "costs and expenses" should be read to include attorney's fees, and that the issue is not yet ripe for decision. (Response at 13-17.) Five Towns, on the other hand, argues that Section 19(c) is an unenforceable penalty and that the issue is ripe. (Brief in Support at 8-12.)

Five Towns's arguments are well taken and may very well raise important points the Court must consider, but they are raised too early in the proceedings for the Court to evaluate.

To determine whether a liquidated damages provision such as Section 19(c) serves a compensatory function or is an unenforceable penalty requires the Court to examine "the intention of the parties, drawn from the words of the whole contract ... in light of its subject matter and its surroundings," as well as "the relation which the sum stipulated bears to the exact injury which may be caused by the [breach] provided against [and] the ease or difficulty of measuring a breach in damages." Benson v. Budget Rent A Car Sys. Inc., 2011 WL 4528334 at *5 (E.D. Pa. Sept. 29, 2011) (internal citations omitted).  In sum, the arguments around Section 19(c) are not pure questions of law that the Court can resolve at this juncture.  Moreover, because the burden is on Five Towns to show that this provision is unreasonable if it wishes to advance this argument, it is all the more appropriate to evaluate this on a more fully developed record.  See Cardiology Care for Children Inc. v. Ravi, 2018 WL 1870717, at *4 (E.D. Pa. Apr. 18, 2018).

### 3. Sealing of Information

Next, the Court will turn to the sealing of materials in this case.  CDL argues that the "competitively sensitive information, namely pricing information and details about service offerings unique in Plaintiff's industry" in the Agreement, and any references to those details in the Agreement, are properly redacted.  (See Motion for Leave to File Under Seal (Doc. 4) at ¶ 3.)  On the other hand, the Court understands that Five Towns disagrees with CDL and reserves its right to challenge CDL's confidentiality designation.  (See Motion for Leave to File Under Seal (Doc. 13) at ¶ 7.)  The Court, upon a preliminary review, denied CDL's request to file the entire Agreement under seal but allowed CDL's proposed redactions, while indicating that if any redactions are inconsistent with In re Avandia Marketing Sales Practices & Products Liability Litigation, the Court may order that that information be disclosed.  See 924 F.3d 662 (3d Cir.

2019) (presumptive right of access to judicial records is overcome by a showing that the type of information sought to be sealed would work a clearly defined and serious injury if disclosed); see also Court's Orders at Docs. 6, 14.  On January 15, 2021, the Court ordered Plaintiff to show cause as to why certain information—namely isotope dose pricing and the billing minimum redacted in Section 3 of Doc. 12-1—should not be unsealed under the standards set forth in Avandia (Doc. 21), and CDL responded as ordered on January 25, 2021 (hereinafter, "CDL Response," Doc. 22).  Shortly thereafter, Five Towns requested leave to file a response, which the Court granted.  (See Docs. 23-25.)

In order for information to be sealed in a civil case, where the information is a judicial record, the party seeking confidentiality must overcome both the common law right of access, and if applicable, the First Amendment of public access.  While the Third Circuit in Avandia declined to extend the First Amendment right of public access to summary judgment records when the common law right of access is sufficient, it noted that if a district court determined that any documents should remain sealed under the right of public access, that court must then consider whether the First Amendment right attaches.  924 F.3d at 673, 680.

CDL concedes that the documents in question are judicial records and indicates that it believes both the common law right of access and the First Amendment right of public access apply. (CDL Response at 1.)  In determining whether the First Amendment right attaches, a court must use a two-prong test and examine:

(1) whether the place and process have historically been open to the press; and

(2) whether public access plays a significant positive role in the functioning of the particular process in question.

Avandia, 924 F.3d at 673 (internal quotations and citations omitted).  The Court agrees with

CDL's assessment that the First Amendment right attaches here, and that the redactions must also survive the First Amendment right of public access if the Court finds that the redactions must be protected from the common law right of access.  See Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1061 (3d Cir. 1984) (holding that the First Amendment secures a right of access to civil proceedings).

At present, CDL concedes that certain of its original redactions do not meet these standards, namely radioisotope pricing (Section 3(a) of Doc. 12-1) and the amount of buildout allowance (Section 3(c) of Doc. 12-1).  (CDL Response at 6, 8.)  The Court agrees, and orders that these redactions be removed.

As to the rest of the redactions, CDL argues that the information needs to be protected, in sum stating the redacted information is competitively sensitive, that CDL has taken reasonable steps to protect it, and that its disclosure would harm its competitive standing in the marketplace. (See generally CDL Response.)  CDL also maintains that Five Towns and other CDL clients are under certain confidentiality obligations.  (CDL Response at 5; Motion for Leave to File Under Seal (Doc. 4) at ¶ 6.)[3]

Judicial records begin with the presumption of public accessibility.  Under the framework set in In re Avandia Marketing Sales Practices & Products Liability Litigation, the Court must articulate "compelling, countervailing interests to be protected" and "make specific findings on the record concerning the effects of disclosure" and "provide an opportunity for interested third parties to be heard" in order to overcome the common law right of access.  924 F.3d at 672-73

---

[3] See also Section 42(b) of the Agreement, which reads: "Confidentiality.  Except as required by law, Lessee shall not disclose to any third party for any reason whatsoever any information disclosed or made available by Lessor to Lessee, including the scope and price of services Lessor provides, the terms of this Agreement, or any detail about Lessor's business that is not otherwise publicly available."

(internal quotations and citations omitted).

When the First Amendment right attaches, "[a]ny restriction on the right of public access is evaluated under strict scrutiny" and a party may only rebut the presumption in favor of access by "demonstrat[ing] an overriding interest [in excluding the public] based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Id. at 673.  The party seeking to seal the information, in this case CDL, "bears the burden of showing that the material is the kind of information that courts will protect and that there is good cause for the order to issue." Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984).

In this Circuit, "an interest in safeguarding a trade secret may overcome a presumption of openness." Publicker, 733 F.2d at 1073. While Plaintiff does not characterize the information that it seeks to redact as trade secrets, that does not limit the Court's ability to consider whether that may be the appropriate rubric under which to analyze Plaintiff's redactions.  See Cutsforth, Inc. v. Lemm Liquidating Co., Civil Action No. 17-1025, at *3 (W.D. Pa. Feb. 18, 2020).  Under the relevant statutory authority in Pennsylvania, a trade secret is defined as follows.

> Information, including a formula, drawing, pattern, compilation including a customer list, program, device, method, technique or process that:
> (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

12 Pa. C.S.A. § 5302.

CDL has provided arguments, redaction by redaction, as necessitated by Avandia.  924 F.3d 662 at 677, 680.  The Court will address each in turn.

### a.  *Equipment Lease Pricing (Section 3(a) of Doc. 12-1)*

While Five Towns characterizes the lease rate as "one-off," CDL represents that it is "one

of the most competitive and heavily negotiated terms of a cardiac PET equipment lease." (Five Towns Response at 6; CDL Response at 7.)  CDL avers the negotiated lease fee can vary between customers for the same make and model of equipment.  (CDL Response at 7.)  CDL avers that revealing this price would harm CDL because this information is kept secret from CDL's competitors, and because learning about CDL's fees for Five Towns may impair the goodwill between CDL and its other customers.  (Id.)  The Court finds that because CDL states that the fee is heavily negotiated and that disclosure would cause material harm to CDL's negotiating position in the marketplace, and because the fee is of the kind of information that courts should protect, the fee should be protected.

      b.  *Billable Minimum (Section 3(b) of Doc. 12-1)*

CDL states that the billable minimum is connected to CDL's pricing thresholds amongst various generator use models—specifically, that the billing minimum is set the way it is because Five Towns is under a shared use arrangement.  (CDL Response at 7-8.)  CDL argues that disclosing this will "provide competitors with insight into CDL's radioisotope delivery models, further unfairly advantaging those competitors."  (Declaration of Lon Wilson, President of CDL (Ex. 22-1), hereinafter "Wilson Decl." at ¶ 7.)  CDL also argues that disclosure of such information would provide CDL's competitors with information about CDL's revenue expectations for customers, giving them a competitive advantage.  (CDL Response at 8.)  On the other hand, Five Towns argues that CDL's billing minimum "drives costs that are passed along to Medicare and the public has an overriding interest in being able to view it."  (Five Towns Response at 6.)  While it is true that patient exams would involve Rubidium-82 isotope doses reimbursable to Medicare, it appears to the Court that CDL's setting of a billable minimum has more to do with CDL's pricing in conjunction with whether a customer would be suited to a

shared use model or a full-time model. (CDL Response at 7-8.) While the Court was initially skeptical of the need to keep the billing minimum confidential, the Court had not previously appreciated that the billing minimum was linked to "triggers for transitioning customers between full-time use and shared use models." (Id.) As such, the Court finds sufficient cause here to protect the billable minimum in the Agreement. While not a trade secret per se, it could be considered part of a formula that derives independent economic value from not being generally known to or readily ascertainable to others who can obtain economic value from its disclosure or use.

      *c. Contract Terms for Buildout Allowance (Sections 3(c)(1) and 3(c)(2) of Doc. 12-1)*

CDL avers that the contract terms for the buildout allowance gives "precise details about a unique commercial offering CDL provides to customers that gives CDL an advantage over its competitors." (CDL Response at 8.) CDL states that it keeps the "precise structure of this offering confidential to prevent its competitors from using details about CDL's approach to develop or refine their competitive offerings." (Wilson Decl. at ¶ 8.) Five Towns argues that CDL provides "no specific evidence of harm about how disclosing the *structure* of the loan to competitors may allow them to adapt their offerings to compete with CDL" given its concession that the buildout allowance amount need not be sealed. (Five Towns Response at 6 (emphasis in original).) Yet, CDL states that the specific details of the way they offer a build-out allowance is in and of itself kept confidential and because of its confidential nature, gives CDL a competitive advantage, and argues that revealing those specific terms would cause harm. The Court takes this to mean that the buildout allowance's value to CDL comes from maintaining its confidentiality. Given these representations, the Court finds that the specific contract terms for the buildout allowance would be akin to a trade secret under the relevant statutory authority and

should be protected accordingly.

>  d. *Contract Terms for Generator Use Models (Section 25 of Doc. 12-1)*

With regard to the contract terms relating to generator use models, CDL represents that "it is one of the few, if not only, cardiac PET service providers offering this flexible approach to purchasing unit doses of radioisotope." (CDL Response at 9.) Five Towns argues that because at issue is a "single Lease," that "narrow information is not usually sealed and is so removed from CDL's overall profitability that a competitor could not calculate this information using the terms." (Five Towns Response at 6.) The Court disagrees with Five Towns's categoric line-drawing, though its criticism of the way the cases were cited by CDL, including that the categories of information protected in those cases were different in nature, is well taken. (See Five Towns Response at 5.) To the extent Five Towns argues that aggregate information is more likely to be protected vis-a-vis specific information pertaining to a single agreement, the Court disagrees. Both scenarios could overcome the presumption in favor of access, or fail to overcome the presumption, depending on the facts. In this particular case, CDL argues that it tailored their redactions to "only the key financial triggers establishing the transition between generator use models." (CDL Response at 9.) Moreover, CDL has represented that its "flexible radioisotope delivery model" is "unique in the marketplace," and that "CDL derives substantial economic value from the details of this delivery model not being generally known in the industry." (Wilson Decl. at ¶ 9.) As the Court noted above in its discussion of billable minimums, to the extent the redactions can be considered part of a formula that derives independent economic value from not being generally known to or readily ascertainable to others who can obtain economic value from its disclosure or use, they should be protected.

*e. Reimbursement Decline (Section 40 of Doc. 12-1)*

CDL states that it offers customers "certain protections against reductions in Medicare reimbursement rates for the medical services those customers provide using the equipment and radioisotopes CDL supplies." (CDL Response at 9.) CDL states that disclosure of "CDL's reimbursement decline formula" would provide "a detailed guide of exactly the accommodations CDL is willing to offer" and "from which a competitor can infer CDL's costs and margins." (CDL Response at 9.) Five Towns suggest that because Rubidium-82 dose reimbursement by Medicare is implicated, "the public has a strong interest in understanding Medicare reimbursement, considering its tax dollars are at stake." (Five Towns Response at 6.) CDL argues that the "provision by CDL of financial accommodations if Medical reimbursement declines also provides a competitive advantage to CDL" and states that "disclosing the specific details and triggers for providing those accommodations will harm CDL by providing competitors with details about its offering and by providing a basis from which those competitors can infer CDL's profit margins." (Wilson Decl. at ¶ 11.) It is unclear to the Court how a competitor would be able to discern CDL's profit margins from this information. Nevertheless, CDL's point that this provision provides CDL a competitive advantage is well taken. Just because a contract provision involves or may relate to Medicare does not automatically make it a matter of public concern, because in this case, CDL argues that this provision provides its customers with flexibility in case of Medicare policy changes, and is relevant to CDL's competitive standing. CDL's specific contract provisions providing customers with flexibility in case of Medicare policy changes would be akin to a trade secret under the relevant statutory authority and should be protected accordingly.

In sum, the Court finds that CDL has shown that, for each of the five remaining subjects of redaction, the information is the type of information that courts seek to protect, demonstrated

13

its overriding interest in excluding the public from this information because of the potential harm it may suffer and that the information is subject to efforts that are reasonable under the circumstances to maintain its secrecy, thereby overcoming the common law presumption of access.  CDL has also made compelling arguments that overcome the First Amendment right of public access.  While it is true that this case undoubtedly involves reimbursement to Medicare, which introduces questions about public health, CDL has demonstrated that the specific portions of the provisions in the Agreement related to Medicare it seeks to redact reflect CDL's offerings as a competitor in the marketplace rather than information of public concern.[4]  In addition, CDL has shown it protects the information from disclosure, that there is an overriding interest in protecting this information from disclosure because disclosure would materially harm CDL's negotiating position in the marketplace, and that it is the kind of information that courts seek to protect, akin to trade secrets.  Moreover, CDL has narrowly tailored its redactions by redacting only the specific information that would cause it harm.  As such, because CDL has shown that the five remaining subjects of redaction constitute the kind of information that courts will protect, they are safeguarded against the First Amendment right of access.

---

[4] CDL has conceded that an item in the contract directly billable to Medicare, isotope pricing, should be public—and the Court agrees.

## II.  ORDER

Consistent with the foregoing, Five Towns's Motion to Dismiss (**Doc. 15**) is DENIED. Five Towns shall answer CDL's Amended Complaint within 14 days of this Order.

The Court finds that CDL has shown good cause as to why five of its proposed redactions should remain under seal, namely:

a. Equipment Lease Pricing (Section 3(a) of Doc. 12-1)

b. Billable Minimum (Section 3(b) of Doc. 12-1)

c. Contract Terms for Buildout Allowance (Section 3(c)(1) and 3(c)(2) of Doc. 12-1)

d. Contract Terms for Generator Use Models (Section 25 of Doc. 12-1)

e. Reimbursement Decline (Section 40 of Doc. 12-1)

The two other redactions originally applied, specifically radioisotope pricing (Section 3(a) of Doc. 12-1) and the amount of buildout allowance (Section 3(c) of Doc. 12-1), should no longer be redacted.

CDL and Five Towns are to refile versions of previously redacted documents filed (namely, Docs. 8, 12-1, 16) with the appropriate redactions applied consistent with the Court's findings on or before February 5, 2021.

IT IS SO ORDERED.


February 1, 2021                                s\Cathy Bissoon
                                                Cathy Bissoon
                                                United States District Judge

cc (via ECF email notification):

All Counsel of Record