**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CDL NUCLEAR TECHNOLOGIES, INC, | ) | |
| | ) | Civil Action No. 20-783 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| FIVE TOWNS HEART IMAGING, | ) | |
| MEDICAL, PC | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

## I.   MEMORANDUM

Pending before the Court is Plaintiff CDL Nuclear Technologies, Inc. (hereinafter, "CDL")'s Motion to Dismiss Defendant's Amended Counterclaim (Doc. 35).  After consideration of all briefing, CDL's Motion to Dismiss will be granted.

## A.  BACKGROUND

As the Court writes mainly for the parties, it assumes familiarity with the facts in this case.  This action was initiated by CDL regarding an "Equipment Lease Agreement" (hereinafter, the "Agreement") (Doc. 28), where CDL was the Lessor and Defendant Five Towns Heart Imaging Medical, P.C. (hereinafter, "Five Towns") was the Lessee.  Five Towns, in answering, has raised counterclaims against CDL ("Counterclaim," Doc. 34), as follows: Breach of Contract (related to Medicare Reimbursability) (Count I); Breach of Contract (related to Excessive Demand for Payment) (Count II); and Unjust Enrichment and Assumpsit (Count III).  CDL filed a Motion to Dismiss, moving to dismiss Count I in part and Count II in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).  Specifically, with respect to Count I, CDL asserts that the count should be dismissed "to the extent it alleges CDL breached the duty to renegotiate its

prices under Section 40 of the Lease Agreement," and to the extent Five Towns claims that CDL breached the implied duty of good faith and fair dealing.  Doc. 35.  With respect to Count II, CDL asserts that it should be dismissed in its entirely because "the claim fails to allege that CDL breached any obligation imposed by the Lease Agreement and improperly relies on parol evidence," and to the extent Five Towns claims that CDL breached the implied duty of good faith and fair dealing.  Id.

## B. <u>ANALYSIS</u>

Where disagreement exists on the facts, the Court at this juncture accepts the well-pleaded facts set out in Five Towns's Counterclaim against CDL as true.  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210–11 (3d Cir. 2009).  A court should dismiss a complaint—or in this case, the counterclaim—if it fails to set out "enough facts to state a claim of relief that is plausible on its face."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

### 1.  **Count I – Breach of Contract (related to Medicare Reimbursability)**

Five Towns avers that CDL breached the Agreement by refusing to "adjust its charges and/or renegotiate the Lease amounts" pursuant to § 40 of the Agreement.  Counterclaim at ¶¶ 105-106.  Five Towns alleges that "CDL's refusal to adjust its charges and/or renegotiate the Lease terms and rates violated the implied covenant of good faith and fair dealing in Pennsylvania contracts and Lease terms understood in light of the covenant."  Id. at ¶ 107.  Central to all of Five Towns's allegations is that the actual Medicare reimbursement rate for Rubidium-82 doses (contemplated as $415.00 in the Agreement, with two doses required per exam) is lower than as provided in the Agreement, and that moreover, industry practice dictates that billings to Medicare should be limited to the "Fair Market Value" of Rubidum-82 doses.  Id.

at ¶¶ 100-102.  CDL responds indicating that it has no obligation to renegotiate fees under § 40

of the Agreement, because even if the fee for Rubidium-82 was zero, no obligation to renegotiate

would be triggered, and that therefore the breach of contract claim fails as a matter of law.  Brief

in Support of Motion to Dismiss (hereinafter, "Brief") (Doc. 36) at 2-5.  Nevertheless, CDL

concedes that Five Towns has preserved as a "fact issue" whether CDL breached its duty to

*adjust* its fees under § 40.  Id. at 5 n.2.  CDL further argues that Count I, to the extent it alleges

breach of the implied duty of good faith and fair dealing, fails as a matter of law under

Pennsylvania contract law.  Id. at 5-7.

To assert a breach of contract claim, a party must allege: (1) the existence of a valid

contract; (2) the breach of a duty imposed by the contract; and (3) resulting damages.  Omicron

Sys. v. Weiner, 860 A.2d 554, 564 (Pa. Super. 2004).

When interpreting a contract under Pennsylvania law, courts must adhere to the following:

> In interpreting a contract, the ultimate goal is to ascertain and give effect to the
> intent of the parties as reasonably manifested by the language of their written
> agreement. When construing agreements involving clear and unambiguous terms,
> the Court need only examine the writing itself to give effect to the parties'
> understanding. The Court must construe the contract only as written and may not
> modify the plain meaning under the guise of interpretation.

Southwest Energy Production Co. v. Forest Resources, LLC, 83 A.3d 177, 187 (Pa. Super.

Ct. 2013).  A contract is ambiguous if "it is reasonably susceptible of different constructions and

capable of being understood in more than one sense," and where there is ambiguity, it is

construed against the drafter—which in this case is CDL.  McWreath v. Range Resources—

Appalachia, LLC, 81 F. Supp. 3d 448, 460–61 (W.D. Pa. 2015) (internal citations omitted); see

Five Towns's Response in Opposition to CDL's Motion to Dismiss (hereinafter, "Response")

(Doc. 38) at 9.

Five Towns argues that § 40 should be read to indicate that certain obligations to adjust or

negotiate fees would be triggered if Medicare reimbursement for any individual component needed for cardiac PET perfusion imaging (hereinafter, "cardiac PET scan") (which includes costs for Global Myocardial Perfusion PET, two doses of Rubidium-82, and Global Treadmill) declined by the amounts indicated in the Agreement.  Response at 2-8.  While not providing precise numbers for the "actual Medicare reimbursement rate," which is allegedly lower than the rate in the Agreement, Five Towns avers that CDL breached this portion of the Agreement, by refusing to "adjust its charges and/or renegotiate the Lease terms and rates."  Counterclaim at ¶¶ 100, 106.  CDL, on the other hand, argues that § 40 should be read to refer to declines for Medicare reimbursement on the total cost of a cardiac PET scan—in other words, the triggers should be based on the total of the various components, rather than declines for any individual component.  Brief at 2-5.

The Court finds that, while § 40 could have been more artfully and clearly drafted, it is not ambiguous.  The words "combined," the inclusion of a calculation of the total amount for the cardiac PET scan,[1] and "collective" indicate that § 40 contemplated declines triggered vis-à-vis the total amount for cardiac PET scan, not each of its individual components.  Agreement at § 40.  The Court agrees with CDL that the only narrow fact issue to be preserved here is if CDL had the duty to adjust its fees per § 40.  Brief at 5 n.2.

CDL also objects to Count I, to the extent Five Towns is attempting to bring a separate claim for breach of good faith and fair dealing.  Brief at 5-7.  Claims for breach of good faith and fair dealing are subsumed into any breach of contract claim.  Burton v. Teleflex Inc., 707 F.3d 417, 432–33 (3d Cir. 2013) ("Pennsylvania law generally recognizes a duty of good faith in the

---

[1] The total reflected in § 40 of the Agreement for a cardiac PET scan is $2,675.56.  However, by the Court's calculation based on the figures for the individual components, the sum comes out to a slightly different number: $2,676.12.  This does not change the way the Court reads this portion of the Agreement in any substantive way, but the Court notes the discrepancy.

performance of contracts, [but] this duty does not create independent substantive rights."
(internal quotation marks and citation omitted).)  Five Towns appears to recognize this—
indicating that "it does not advocate for a new duty or a duty contrary to the express terms of the
Lease," but instead applies the duty of good faith to its reading of § 40 of the Agreement.
Response at 9.  Five Towns argues that multiple terms of the Agreement show that the contract is
premised on Medicare reimbursability, and that therefore, the Rubidium-82 rate contemplated in
the Agreement must be Fair Market Value and reimbursable by Medicare.  Response at 9-11.
These arguments may have been relevant if the Court found § 40 to be ambiguous, but it does
not.  Therefore, to the extent Five Towns premised its breach of contract claim on a breach of the
implied duty of good faith and fair dealing, it is dismissed with prejudice for failing to state a
claim as a matter of law.

However, the Court notes that the arguments Five Towns raises may be relevant to other
components of the case that could survive.  For example, Five Towns also disputes the existence
of a valid or enforceable contract and brings a counterclaim for unjust enrichment and assumpsit
under Count III—these arguments can be further explored with the benefit of discovery.
Counterclaim at ¶¶ 95, 126-134.

In sum, at this stage of the proceedings, Count I will be dismissed, in part, with prejudice
because amendment would be futile—to the extent Five Towns alleges breach of contract due to
CDL's failure to *renegotiate* its fees under § 40.   However, Count I survives to the extent Five
Towns avers that CDL breached the duty to *adjust* its fees under § 40 of the Agreement.

## 2.  Count II -- Breach of Contract (related to Excessive Demand for Payment)

With respect to this count, Five Towns again disputes the existence of a valid or
enforceable Agreement, but brings Count II with the understanding that if the Agreement exists,

5

CDL breached before any alleged breach by Five Towns.  Counterclaim at ¶ 111.  Five Towns avers that the Agreement "limits Five Towns' [sic] fees to CDL for Rubidium-82 doses to the amount reimbursed by Medicare and/or the Fair Market Value rate."  Id. at ¶ 113.  Five Towns alleges that CDL and its agents represented that the rates reflected in the Agreement would be "Fair Market Value and reimbursable by Medicare."  Id. at ¶¶ 114-115.  Five Town states that "CDL knew Five Towns would rely on these representations, and Five Towns did rely" and that "CDL's refusal to accept reimbursable and/or Fair Market Value rates for Rubidium-82 doses contradicted CDL's own representations to Five Towns regarding Fair Market Value, reimbursability, and the Lease rates."  Id. at ¶¶ 118, 122.  Finally, Five Towns alleges that "CDL's refusal to accept reimbursable and/or Fair Market Value rates for Rubidium-82 doses breached the implied covenant of good faith and fair dealing in Pennsylvania contracts and Lease terms understood in light of the covenant."  Id. at 123.

CDL argues that Count II should be dismissed because it alleges breach of contractual and implied duties that do not exist.  Brief at 7-12.  CDL states that Five Towns's position appears to be that the Agreement contemplates a duty for CDL to lower its price for Rubidium-82 if it is not "Fair Market Value," going beyond the express terms of the Agreement.  Id. at 7-8. CDL argues that because of the parol evidence rule and existence of an integration clause in the Agreement, Five Towns cannot rely on any representations allegedly made by CDL or its agents to bring this claim.  Id. at 8-11.  Last, CDL argues Five Towns cannot expand CDL's obligations beyond what is in the Agreement based on a breach of the implied duty of good faith and fair dealing.  Id. at 12.

For the reasons stated by CDL in its Brief, the Court finds that Five Towns has failed to state a claim upon which relief can be granted.  Count II is a about Rubidium-82 rates, and as

CDL points out, there already is a section of the Agreement, § 40, which covers what the parties'

obligations are with respect to Medicare reimbursement declines.  The Agreement does not

include or imply a concept of "Fair Market Value," nor does it contain express terms that require

the Rubidium-82 fees to directly mirror the amount that Medicare reimburses.  The sections of

the Lease identified by Five Towns (§§ 3, 32, 36, 37, 39, and 40) as including such duties do not,

based on a plain reading.  Counterclaim at ¶ 113.  Five Towns avers that it "is not arguing that

CDL promised something outside of the four corners of the Lease" and that it is instead "arguing

that the Lease language means what it says and that CDL's own conduct confirms what the

parties agreed to."  Response at 13.  In addition, Five Towns argues that because the contract

terms are ambiguous, extrinsic evidence should be considered for interpretation purposes.  Id. at

14.  Yet the Court finds § 40 unambiguous, so Five Towns cannot rely on information outside of

the Agreement to bring this claim for breach of contract.  To the extent Five Towns alleges

breach of good faith and fair dealing with this claim, it is subsumed into the breach of contract

claim, for the same reasons discussed above in the Court's analysis of Count I.  Therefore, Count

II will be dismissed with prejudice.

## II.   **<u>ORDER</u>**

Consistent with the foregoing, CDL's Motion to Dismiss Defendant's Amended Counterclaim (**Doc. 35**) is **GRANTED**.  CDL shall answer Count I (to the extent it relates to its obligation to adjust fees pursuant to § 40) and Count III of Five Towns's Counterclaim within 14 days of this Order.

IT IS SO ORDERED.


December 14, 2021                                    s\Cathy Bissoon_____
                                                     Cathy Bissoon
                                                     United States District Judge

cc (via ECF email notification):

All Counsel of Record