IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CDL NUCLEAR TECHNOLOGIES, INC, | ) | |
| | ) | Civil Action No. 20-783 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| FIVE TOWNS HEART IMAGING, MEDICAL, PC | ) ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

**I.   MEMORANDUM**

Pending before the Court is Defendant/Counter Claimant Five Towns Heart Imaging Medical, PC (hereinafter, "Five Towns")'s Motion to Enforce Settlement (Doc. 51).  The Court has considered parties' briefing, including Plaintiff/Counter Defendant CDL Nuclear Technologies, Inc. (hereinafter, "CDL")'s Response in Opposition (Doc. 53) and Five Towns's Reply (Doc. 54).  The Court also held a Motion Hearing on February 4, 2022, allowing parties to present witnesses and evidence.  After consideration of all briefing and the evidence presented at the hearing, Five Towns's Motion to Enforce Settlement will be granted.

As the Court writes mainly for the parties, it assumes familiarity with the facts in this case.  Five Towns argues that there was an enforceable settlement in this case, whereas CDL argues that there was not.  The question boils down to whether or not there was a contract — there was.

The standard of review for a motion to enforce a settlement agreement is similar to the standard applicable to a motion for summary judgment.  See Tiernan v. Devoe, 923 F.2d 1024, 1031 (3rd Cir. 1991).  Thus, in order to prevail on a motion to enforce a settlement, the movant

must demonstrate that there are no disputed material facts regarding the terms and existence of the contract. Tiernan, 923 F.2d at 1031-32. Contract law governs the enforceability of a settlement agreement. Mazzella v. Koken, 559 Pa. 216, 224, 739 A.2d 531, 536 (1999).[1] For a contract to exist, "the minds of the parties should meet upon all the terms, as well as the subject matter, of the [agreement]." Id. (internal citations omitted). Significantly, "[a]n agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing." Green v. John H. Lewis & Co., 436 F.2d 389, 390 (3d Cir. 1970) (internal citations omitted). This is true even where "a party had a change of heart between the time he agreed to the terms of the settlement and when those terms were reduced to writing." Transp. Int'l Pool, Inc. v. Alternative Transp., Inc., 2008 WL 2550598, at *5 (E.D. Pa. June 25, 2008) (internal citations omitted).

The facts are as follows, and not in dispute. On December 13, 2021, David Belczyk emailed Christopher Brodman,[2] stating, "[h]ere's what Five Towns would be willing to do." Doc. 51-1 (Exhibit A). Mr. Belczyk attached a document to the email. The document was a "Stipulation of Dismissal with Prejudice." Id. It indicates that parties stipulate to the dismissal of all claims and counterclaims with prejudice and that parties would bear their own costs. Id. No other terms were offered or suggested by Mr. Belczyk. Later that same day, Mr. Brodman responded, stating, "[a]greed. Let's put this one to bed. I'll let the litigators know and you guys can do what needs to be done to finalize this. Ow [sic] everyone can get on with focusing on more productive things." Doc. 51-2 (Exhibit B). Again, no other terms or conditions were offered or suggested by Mr. Brodman. Here ends the contract — offer and acceptance. The events that transpired next are interesting insofar as they are confirmatory of the Court's

---

[1] Neither party disputes that this action is governed by Pennsylvania law.
[2] Neither party disputes Mr. Brodman's authority to represent CDL in this matter.

conclusion, but not relevant to the formation of the aforementioned contract which was perfected upon Mr. Brodman's acceptance.

The next morning, on December 14, 2021, clearly upon reflection, Mr. Brodman emailed Mr. Belczyk, stating, "[O]ne other thing," and "I suggest that there be a simple settlement agreement for this that includes a mutual confidentiality and non-disparagement provision. I feel that under the circumstances that would be in the best interests of all parties. Please let me know your thoughts." Doc. 51-3 (Exhibit C). This plainly was a new suggestion from Mr. Brodman, one that could have been made in his email of the prior day had there been an intention that there be additional settlement terms. Unsurprisingly, Mr. Belczyk responded, "I do not have authority to agree to anything other than the stipulation I offered, which you already agreed to and accepted yesterday. If CDL wants to propose a separate and additional agreement, please send over a draft for Five Towns' review." Id. Mr. Brodman then responded, "I agreed and accepted subject to the litigators finalizing. That meant a settlement agreement. C'mon." Id. Mr. Belczyk and Mr. Brodman testified during the hearing that after these emails were exchanged, CDL sent Five Towns a draft settlement agreement that included a release, and the parties continued to negotiate revisions until the parties reached an impasse. See also Motion at ¶ 9.

As general counsel, whether inside or outside, there cannot be, and has not been, any suggestion that Mr. Brodman was anything other than an authorized agent of CDL, and a contract was formed on December 13th when Mr. Brodman accepted Five Towns's offer. The consideration here is obvious, as the parties gain the benefit of resolving this litigation. If Mr. Brodman understood differently, as he now claims, he was free to propose something else, but he did not. Instead, he "[a]greed." That Mr. Brodman is not a litigator is of zero consequence. Had Mr. Brodman been a layperson with no legal training, the result here would be the same.

The record is clear that the negotiations that took place after December 13th, in an effort to reach an agreement on a release, was a separate negotiation for an additional agreement to the contract already reached — *i.e.*, "one other thing."  See Motion at ¶¶ 7, 15.  Parties are free to negotiate other terms, but that does not affect the binding nature of the existing agreement.  See Compu Forms Control, Inc. v. Altus Grp., Inc., 574 A.2d 618, 624 (Pa. Super. 1990) (noting additional terms proposed during settlement negotiations that were not agreed upon do not prevent enforcement of the agreed upon terms).

CDL claims that there was more to be done given Mr. Brodman's words that he would "let the litigators know" so that the parties could "finalize this."  Response at 6-7.  But, as Five Towns points out, the only "this" to be finalized was the offer on the table — the stipulation that had been accepted by Mr. Brodman.  See Motion at ¶ 14.

CDL also urges that the stipulation of dismissal was missing "essential terms," because both parties purportedly considered a release an essential term to settlement.  Response at 11.  First, the record does not support a conclusion that there were any missing terms.  There was an offer and acceptance void of any suggestion of additional terms.  Second, the agreement was a sufficiently definite one insofar as no other terms are required to enforce it — the parties agreed to dismiss all claims against each other, with prejudice, and agreed to bear their own costs — end of story.  Finally, while it may be more common to see a release in this context, this argument is a red herring.  Settlement agreements certainly do not have to include a release.  See Wolf v. Consolidated Rail Corp., 840 A.2d 1004, 1008 (Pa. Super. Ct. 2003) ("If [the defendant] wanted additional conditions on its agreement to settle—such as the plaintiff's signature on a broad general release—it should have made those terms explicit at the time it entered into the settlement agreement.").  In sum, while the nature of this settlement is somewhat unusual, the

4

agreement is contained in the plain language of the stipulation of dismissal, as agreed upon by the parties.

## II.     ORDER

Consistent with the foregoing, Five Towns's Motion to Enforce Settlement (**Doc. 51**) is **GRANTED**.  An enforceable agreement to settle was formed on December 13, 2021.  Consistent with that agreement parties stipulated to the dismissal of all claims and counterclaims with prejudice and agreed that parties shall bear their own costs.  Therefore, IT IS ORDERED that this matter is dismissed with prejudice, and parties are to bear their own costs.

    IT IS SO ORDERED.

February 10, 2022                                        s\Cathy Bissoon
                                                                      Cathy Bissoon
                                                                       United States District Judge

cc (via ECF email notification):

All Counsel of Record